Oliver C. Hays *vs*. The N. B. & N. H. Turnpike and Bridge Co. et al.

In General Term—January 1855.

Before Judges STORER, GHOLSON, and SPENCER.

OLIVER C. HAYS *vs*. THE NEW BALTIMORE & NEW HAVEN TURN-PIKE AND BRIDGE CO. HENRY LINGO, executor of JOSIAH LINGO, deceased, and others.

A creditor has no right to pursue his *debtor's debtor* or *trustee*, in the *first instance*, jointly with his *own debtor*; he must first obtain judgment against the *latter*, and in default of property real or personal to satisfy the same, may proceed to enforce it against the former.

A summary process is provided in such cases, by Sections 464 *et seq*. of the Code.

It has never been held, that a debtor was the trustee of his creditor's creditor, or that he could be called on to pay his creditor's debts, before judgment has been rendered against such creditor; nor does the Code intend to introduce a new rule upon the subject.

Error to Special Term.

SPENCER, J. delivered the opinion of the Court.

This is a petition in error to reverse a judgment at Special Term, rendered by GHOLSON, J. The plaintiff in error brought an action to recover a certain sum alleged to be due him by the New Baltimore and New Haven Turnpike and Bridge Company—at the same time claiming that said Turnpike and Bridge Company were insolvent, and that the other defendants were indebted to said company upon certain obligations given by them to the Company for stock, etc.—and asking that such other defendants may be required to pay the plaintiffs the amounts respectively due by them to the principal defendant, so far as may be necessary to discharge the amount which may be found due by the principal defendants to the plaintiff. Part of the defendants answered, and part were in *default*. The case being submitted to the Court, a judgment was rendered in favor of the plaintiff, against the Turnpike and Bridge Company (the debtor in chief, ) for the sum of $321.00, but as to all the other defendants, the Court found that the plaintiffs had no cause of action against

36

them, for the reason that the plaintiff had not, before the filing of his petition, obtained a judgment against the said Turnpike and Bridge Company; that there was an improper joinder of parties and causes of action, and so the petition was dismissed as to said other defendants. An exception was taken by the plaintiff to this ruling of the Court, and thereupon he has filed the present petition to reverse the judgment.

Various errors have been assigned in the petition, but they are disposed of by considering the single question whether the Court properly dismissed the action as to all the defendants, other than the New Baltimore and New Haven Bridge Co.

It is very clear that before the adoption of the Code, the plaintiff had no cause of action whatever, either at law or *in equity* against Lingo and the other defendants, until he had first obtained a judgment against his debtor in chief, viz., The Turnpike and Bridge Company.

At common law a *judgment* creditor, even, could not pursue his debtor's debtor, to enforce payment of his own claim. In equity he might thus proceed, after an execution against his immediate debtor had been returned *unsatisfied*. But even here there was no remedy, until after an *execution* was actually returned *unsatisfied*. By Statute in Ohio, however, a creditor's bill might be filed after judgment, without or before execution, upon an allegation that there was no property real or personal of the debtor to levy upon; but not upon an allegation of the *insolvency* of his debtor. These proceedings in equity, were in the nature of an equitable *attachment* or execution, and *not*, as seems to be supposed by plaintiff's counsel, the pursuit of a *trust* fund. Had the idea of a *trust* lay in the found-

Oliver C. Hays *vs.* The N. B. & N. H. Turnpike and Bridge Co. et al.

ation of the jurisdiction, in such cases, it would not have been necessary that the complainant, in any case, should have proceeded to *judgment* against his debtor, before seeking to subject the trust fund. Besides, upon the hypothesis of compelling a *trustee to account*, it would have been clearly incompetent to pursue in one bill, several different trustees of distinct and independent trusts.

The Code seems to have furnished the *same* remedy, and to the same extent in favor of a *judgment* creditor, which had previously existed in *chancery* under the statute. By Section 458, it provides, that, " Where a *judgment* debtor has not personal or real property, subject to levy on execution, sufficient to satisfy the judgment, any equitable interest which he may have in real estate, &c., or in any money contracts, claims, or choses in action due, or to become due to him, &c., should be subject to the payment of such judgment." Now, if it had been supposed or intended, that *any* creditor had a just cause of action against his debtor's *debtors*, or *trustees*, and might pursue him, in the *first instance*, jointly with *his own debtor*, it would seem absurd, (as well as useless,) to provide that, *after* he had obtained a *judgment* against his debtor, and in default of property, real and personal, to satisfy the same, he might proceed to enforce its collection, by requiring payment from the same *debtor* or *trustee*. The very fact, therefore, that this provision has been inserted in the Code, wholly *negatives* the *idea*, that a creditor has any claim *before* judgment, against his debtor's *debtor*, or *property*.

It is supposed, however, by the plaintiff's counsel, that inasmuch as the petition contains an averment of the *insolvency* of the *chief* defendant, it shows, that judgment

against him alone would be *fruitless;* and that to avoid *circuity* and *multiplicity* of actions, he should be allowed in the first instance, to bring into Court the debtors of his debtor, and thus litigate his claims against all in one suit; and procure satisfaction by means of one and the same judgment. To this there are several obvious answers and objections:

1. It is doubtful, whether the adoption of such a course would not rather tend to produce confusion and multiplicity of useless litigation, than to restrict and circumscribe it. For after all, should the plaintiff fail to establish his claim against his principal debtor, his claims collaterally against the other parties must necessarily fail, and thus a large amount of useless litigation have been occasioned.

2. His judgment against the principal debtor, though he be insolvent, would not be *fruitless*, without a new and further suit against the other defendants. For the Code provides, in the 464th and following Sections, a summary process, by which payment may be enforced *from* these other defendants, of the amounts severally due by them, to the principal defendant, without further suit.

3. Such a practice would controvene the whole scope and policy of the law, which allows a debtor to dispose of his property at any time before judgment, provided the same be done honestly, and in good faith; and virtually operate, as an attachment of a debtor's effects, upon a mere allegation of his *insolvency*, (not traversable, because not of the essence of the action,) and that, too, without *giving bond*, to secure him against harm, should the suit against him fail; and as the creditor would be bound to do, had he taken out an *attachment* in *form*, on any other ground than that of *non-residence*.

It is not deemed profitable to pursue the subject further. The Code did not intend to change the relations of debtors and creditors; nor to create trusts, either express or implied, in cases where they did not exist under previous laws. It has never been held, or supposed, that a debtor was trustee for his *creditor's creditor;* or that he could be called upon for the payment of his creditor's debts, until after judgment rendered against his creditor. Nor do we think the Code intended to introduce a new rule on the subject.

We are satisfied with the judgment of the Court; and it will therefore be *affirmed.*

WOODRUFF & HOPKINS for plaintiff. SAFFIN for defendant.

